## JOSEPH GOODNOW & CO., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

### Docket No. 7895.   Promulgated January 24, 1927.

1. By unanimous consent of all the stockholders corporate net profits may be divided and distributed among the stockholders other than ratably according to stockholdings.

2. The evidence in the instant case discloses the intent of the only two stockholders of the petitioner to divide the net profits between them without regard to stock holdings, and the proceeds of such division did not constitute additional salaries to the recipient.

*Frank J. Albus, Esq.,* for the petitioner.
*W. Frank Gibbs, Esq.,* for the respondent.

The deficiencies here in question are for the fiscal years ending January 31, 1919, and January 31, 1920, and arise under section 234 (a) (1) of the Revenue Act of 1918. They aggregate $1,602.60, as appears from the respondent's deficiency notice of August 12, 1925.

FINDINGS OF FACT.

The petitioner is a Massachusetts corporation with its principal office at 294 Causeway Street, Boston. The stockholders of the tax-payer are W. H. Palmer and F. G. Boggs, the former owning one-third of the stock and the latter owning two-thirds of the stock.

The corporation was organized on February 1, 1914, and succeeded a partnership formerly operated by Palmer and Boggs. Palmer, the president, acted in the capacity of manager, buyer, sales manager, and financial manager and devoted his entire time to the business. Boggs, the treasurer, devoted only a portion of his time to the business of the corporation.

Records of a special meeting held January 18, 1915, by the board of directors read as follows:

A special meeting of the Board of Directors was held at the office of the Treasurer, at No. 110 State Street, Boston, Massachusetts, on January 18, 1915, Monday, at 1:30 o'clock in the afternoon, in pursuance of the foregoing waiver of notice signed by all three Directors, and filed herewith said waiver of notice, waiving notice and accepting same as stated in the waiver.

The President, Winfield H. Palmer, called the meeting to order and presided; and the clerk kept the records.

All three Directors were present and the President therefore declared that a quorum was present and participating in the meeting.

The clerk then read the records of the last meeting of the Board of Directors, in the meeting held January 8, 1914, the original meeting of the Directors at the time of incorporation of the company.

Upon motion duly seconded, it was unanimously

Voted: That the records of the last meeting of the Board, viz, the meeting held January 8, 1914, be approved as recorded by the clerk.

The President then presented the meeting and read a preliminary draft and estimate of the figures showing expected profits from the operation of the business for the fiscal year, this being the first year of business under the corporate existence.

Upon motion, duly seconded, it was unanimously

Voted: That the salary of the Treasurer be designated as three thousand nine hundred dollars ($3,900) per year, beginning as of January 31, 1914.

No further business coming before the meeting, it was unanimously

Voted: To adjourn.

Adjourned.

The following is a statement with reference to profits of the company and their distribution appearing on the minute books of the corporation under date of January 18, 1915:

This company was incorporated in January 1914, and was formerly carried on as a co-partnership. As Francis G. Boggs has other interests corporate existence was decided upon. It is the intention of the owners of the business, however, that this method of distribution of profits be continued, the stock-holding being for the purpose of assuring control of the business.

It has heretofore been the custom to designate a salary which would be drawn on during the year, and at the end of the business year after an audit,

the profits would be divided equally between Francis G. Boggs and the Manager of the business at the time. It has always been an understood custom in this business enterprise that the equal distribution of the net profits be made and that it is part of the remuneration of the managers of the business.

The matter of return on money invested in the business is to be continued as heretofore.

The designated salary is allowed so that the managers of the business may have an account which can be drawn on periodically between accounting periods.

This report is made by the Clerk as a memorandum of the discussion of the business at the meeting but on which no actual vote was deemed necessary except the votes designating the salary amounts which have been used during the year.

<div style="text-align: right;">F. Chester Everett,<br>Clerk.</div>

In accordance with the above minutes, it has been the consistent policy of the corporation to distribute equally between the two stockholders the net income of the corporation regardless of, and without respect to, the stock holdings. Under this policy each stockholder received $6,600 during the year ended January 31, 1919, and $11,100 during the year ended January 31, 1920, which amounts excluded the $3,900 paid to each in accordance with the minutes quoted above. In other words, the $6,600 received by each stockholder during the year ended January 31, 1919, and the $11,100 received by each stockholder during the year ended January 31, 1920, did not include any part of the $3,900 paid to each in accordance with the minutes. The $3,900 paid to each stockholder during each year has been allowed by the Commissioner as a deduction from gross income in arriving at the net taxable income of the corporation.

When reporting amounts received from the petitioner, the individuals consistently reported $3,900 as salary and the balance as dividends. The Commissioner allowed $3,900 to each stockholder as salary but considered the equal distribution in excess of the $3,900 as dividends and refused to allow the petitioner to deduct any part thereof as additional compensation to Palmer.

Petitioner filed income and profits-tax returns for each of the taxable years in question and in the return for each year took deduction for officers' salaries in the amount to $7,800. Attached to each return were supporting schedules, and among these schedules appeared the following in the case of each of such returns:

<div style="text-align: center;">Schedule A–13</div>

<div style="text-align: center;">·Compensation of Officers</div>

| | |
|---|---|
| W. H. Palmer, Pres. (1/3 stock) | $3,900.00 |
| F. G. Boggs, Treas. (2/3 stock) | 3,900.00 |
| Total | $7,800.00 |

<div style="text-align: right;">Entire Time Given to Business.</div>

## OPINION.

Korner, *Chairman:* It appears that petitioner filed tax returns for the years here in question, reporting and taking deduction for salaries for Palmer and Boggs in the amount of $3,900 each—a total in each year of $7,800. The respondent allowed these deductions without question, but made certain other adjustments resulting in a deficiency. Those adjustments are not complained of by the petitioner. In its petition it specifically waives them. It appears, however, that the petitioner sought to have the respondent make a further adjustment by allowing one-half of Palmer's share of the divided net profit to be deducted from income by the petitioner on the ground that such share of the profits represented additional salary to Palmer. This the respondent declined to do. The statement supporting the deficiency notice of August 12, 1925, is not in the record and we are unable to learn whether the entire deficiency here appealed from grew out of the adjustment made, to which no exception is taken, or whether all or any part of it grows out of the refusal of the respondent to allow the petitioner's contention as to Palmer's salary. It would seem, however, from an inspection of the petition that the former is the true state of facts. If such be the case, the deficiency here in question is predicated on adjustments about which there is no dispute and which are conceded to be proper by the petitioner. However, there is a deficiency notice the basis of which is uncertain, and the parties have filed a stipulation of facts and ask for a determination of the issue thereon. To the extent that the deficiency must stand or fall on our determination of the issue presented by the stipulation, we arrive at a determination thereof as a basis for such deficiency. To the extent that the deficiency in question is not predicated on the facts set out in the stipulation, our resolution of the issue therein presented does not affect the deficiency.

Boiled down to its essence, the fact here is that Palmer owned one-third of the stock of the petitioner, while Boggs owned two-thirds. Palmer devoted his entire time to the business while Boggs devoted a portion only of his time. (This fact is not borne out, however, by the petitioner's notation in Schedule A-13 attached to its return.) Palmer had an authorized salary of $3,900 per year and Boggs had a yearly salary in an equal amount. At a meeting of the stockholders on January 18, 1915, it was agreed that the net profits of the business should be equally divided between Palmer and Boggs because this method had been employed by them in a partnership which was the predecessor to the petitioner corporation.

The petitioner contends that it is entitled to a deduction from gross income of one-half of $6,600 for the year ended January 31,

1919, and one-half of $11,100 for the year ended January 31, 1920. The amounts just mentioned represent Palmer's one-half share of the net profits of the petitioner for those years pursuant to a division in accordance with corporate minutes of January 18, 1915. The petitioner contends that the amounts it seeks to deduct represent additional salaries paid to Palmer in the taxable years in question. It bases this contention on the fact that Palmer rendered more service to the petitioner than did Boggs. It argues that this equal distribution of net profits could not be a dividend, because dividends must be distributed in ratio to stock holdings, and that on that basis Boggs' share would be twice as much as Palmer's. As a corollary it is argued that, because Palmer did more work than Boggs, he should have proportionately more salary. Neither of these contentions is *ipso facto* true. By unanimous agreement among the stockholders of a corporation, the profits may be divided and distributed other than ratably according to stock holdings. 6 Fletcher on Corporations, p. 6114, sec. 3674; 14 C. J. 815; *Breslin* v. *Fries–Breslin Co.*, 70 N. J. L. 274; 58 Atl. 313, 318. It is also true that by agreement or contract the corporation may secure the services of one man at less than they are worth, and at the same time pay a greater salary to another man who, in fact, does less work for it. If the salary paid to the latter is a reasonable salary, it does not follow that the former must necessarily receive a greater salary.

It is true, and we have held, that salaries may be paid which depend for their amount on the profits of the business. *Coghlin Electric Co.*, 3 B. T. A. 1071; *Block & Kohner Mercantile Co.*, 4 B. T. A. 673. In our view of it, these cases are not in point here but are clearly distinguishable on their facts. What is the situation here? The record does not disclose any authorization for salaries except the salaries of $3,900, unless it be found in the minutes of the corporation of January 18, 1915. There is no such specific authorization in those minutes, but the petitioner urges that such authorization is contained in the sentence: " It has always been an understood custom in this business enterprise that the equal distribution of the net profits be made and that it is a part of the remuneration of the managers of the business." We think that when this sentence is read in the light of the context, it is not conclusive of the contention made for it.

From the context we conclude that the real state of facts was about as follows: Palmer and Boggs were partners. They divided all profits equally between them. Boggs had other interests and corporate existence was decided upon. Why the share holdings of the two were not the same is not disclosed by the record. It is apparent, however, from the record that they desired to continue the equal distribution of the profits. In the beginning they voted equal

salaries to Palmer and Boggs. Soon, thereafter, a declaratory minute was entered stating, in effect, that it had been the policy theretofore to divide the net profits equally between Palmer and Boggs and that it was the intention to continue this policy. In making tax returns thereafter this policy appears to have been borne in mind, for we find that the petitioner reported as annual salary $7,800, i. e., $3,900 each to Palmer and Boggs. This was done in both of the taxable years in question here. Those returns showed net profits after all deductions, and that is the net profit or portion of which the petitioner now seeks to have deemed as salary and deducted from income.

We are not convinced from this record that there was an authorization of the additional salary contended for here. In our opinion it was what the parties denominated it—a division of the net profits after deduction of salaries and other expenses. *When Clothing Co.*, 1 B. T. A. 973. The petitioner itself appears to have so considered it, as evidenced by its tax returns.

<div align="center">

*Judgment will be entered for the Commissioner.*