The Bar Products Company, Inc. v. Commissioner.
Bar Prods. Co. v. Commissioner
Docket No. 21633.
United States Tax Court
1950 Tax Ct. Memo LEXIS 240; 9 T.C.M. (CCH) 251; T.C.M. (RIA) 50073; March 24, 1950
*240 Upon all of the evidence, a reasonable allowance for the compensation of two officer-employees of the petitioner for the year 1943 is determined. John A. Verhunce, Esq., Cleveland, Ohio, for the petitioner. William R. Bagby, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined the following deficiencies in petitioner's taxes for the year 1943: Income tax
$ 288.14
Excess profits tax
8,709.69
Declared value excess-profits tax
1,204.43
Total
$10,202.26
One issue is presented for decision - the amounts of the annual salaries of two officers of the petitioner for the purpose of deduction under section 23(a)(1)(A) of the Internal Revenue Code. The petitioner paid $15,000 in 1943 to each of two officers, its president and its secretary-treasurer, as salaries. The respondent determined that a reasonable allowance for compensation of each officer for services rendered to petitioner amounts to $9,000, each, and, accordingly, he disallowed $6,000 of the deduction taken for the compensation of each officer, or a total of $12,000. Another small adjustment, *241 made by the respondent, is not contested. The question to be decided is the reasonable allowance for the salaries of two officers of petitioner. Petitioner contends that $15,000 salary for each officer, is deductible as a reasonable allowance, and claims a total deduction of $30,000 rather than the total deduction of $18,000, which the respondent has allowed. The petitioner corporation was organized in January, 1943. The only taxable year involved, therefore, is 1943. Petitioner filed its income and excess profits tax returns for 1943 with the collector for the eighteenth district of Ohio. The record includes the testimony of several witnesses. Findings of Fact The petitioner is an Ohio corporation which was organized in the latter part of December, 1942, or on January 1, 1943. Its place of business is in Cleveland. Vincent A. Povse and Edward C. Lucic, who organized the petitioner, owned all of the stock of petitioner, in equal amounts, during 1943. The business of the petitioner is the manufacture of small screw machine products and the operation of a general machine shop. Petitioner keeps its books and makes its returns on the accrual basis. During 1943, the officers *242 of the petitioner were Vincent A. Povse, president, and Edward C. Lucic, secretary-treasurer. During 1943, the board of directors consisted of Lucic, Povse and his wife, and William Thronberens, an accountant. The machinery and equipment of petitioner consisted of four screw machines, two bench lathes, six drill presses, and two milling machines. This depreciable equipment was carried on the books at a cost of $23,669.62, before depreciation, and constituted the chief asset of the petitioner. The chief expense of doing business was labor expense. Povse and Lucic were young men, under 30 years of age, in 1943, but they were skilled in their trade. Both were skilled machinists in the setting up and operation of screw machines and in plant operation. Prior to 1942, Povse had been employed in several plants as a skilled machinist and "set-up" man; and prior to 1941, Lucic had been engaged in the same type of work as an employee. In 1941, Lucic entered into a business venture with Dietrich, forming a partnership which conducted a screw machine products business under the name of Bar Products Company. In 1942, Povse came into the business by purchasing Dietrich's one-half interest. The *243 business was in poor financial condition, having liabilities in excess of assets. Povse and Lucic carried on the business under corporate form, and 1943 was the first year of their operations. Lucic continued in the business during part of 1944, until he went into the armed service. Later, he sold his interest to Povse who continued to carry on the business. During 1943, the services performed by Povse for the petitioner were as follows: Povse solicited all of the business on a competitive bid basis. He also worked in the plant both as a foreman and as a machinist. Through his solicitation of business, the petitioner's gross sales in 1943 amounted to $102,224, before returns and allowances of $10,390, or a net gross amount of about $91,834. Subcontracts were obtained from about twelve concerns, including the Ford Products Company, Marquette Metal Company, and others in the Cleveland area. Petitioner needed capital, and Povse succeeded in borrowing about $15,000. He also invested his own savings in the business, and borrowed on his personal notes. During 1943, Povse's work in the business averaged from twelve to sixteen hours a day. All of his time was spent in the plant when he *244 was not out soliciting business. Delivery was an important factor under the contracts upon which work was done throughout the year. Help was difficult to get and keep, and much of the work under the contracts was done by Povse and Lucic. Povse's duties included those of a skilled operator and "set-up" man in the plant, in addition to those of soliciting business, capital, and managing and planning operations. The petitioner paid him $15,000 in 1943 for all of his services, including his work in the plant. The salary of $15,000 for Povse was agreed upon by the directors at the beginning of 1943. The amount was arrived upon after giving consideration to salaries paid to the chief executives of concerns of about the same size, which were engaged in the same business, and had about the same volume of business. During 1943, Lucic devoted all of his time in the production work of the petitioner. He was a foreman, "set-up" man, and a skilled operator. His hours of work throughout 1943 were from twelve to sixteen hours per day. He did not bring in any business but devoted his time entirely to plant operations. He set up machinery for employees to operate, planned work, and was in charge *245 of the plant in Povse's absence. He figured the costs of certain jobs, and kept operations running continuously so as to make deliveries, as required. Petitioner paid Lucic $15,000 for all of his services in 1943. His salary was agreed upon by the directors at the beginning of 1943 upon the basis of the work he was expected to perform. In addition to $30,000 which petitioner paid Povse and Lucic in 1943, petitioner paid other employees wages totalling $31,598. The number of employees ranged from twenty-five during one month to three in other months. The sum of $15,000 which was paid Povse in 1943 was a reasonable allowance for his salary and compensation for all of the varied services which he rendered. The sum of $9,000 is a reasonable allowance for the salary and compensation of Lucic for the services which he rendered. Opinion Under section 23(a)(1)(A) of the Internal Revenue Code, deduction is provided for all "the ordinary and necessary expenses paid or incurred during the taxable year" in carrying on a business. The statute provides, further, that there shall be included in the deduction for ordinary and necessary business expenses "a reasonable *246 allowance for salaries or other compensation for personal services actually rendered." (Italics supplied). A distinction is made in the pertinent section of the Code between all of the ordinary and necessary business expenses which are paid or incurred during the taxable year, and "a reasonable allowance" for salaries or other compensation for personal services. It is well settled under the decisions of a large number of proceedings, that the question of what amount constitutes "a reasonable allowance" for compensation for personal services, for the purpose of a deduction as an expense of a business, is a question of fact to be decided upon the evidence submitted in a proceeding. The fact that an amount is actually paid as compensation for services is not the sole determinative fact of reasonableness. In order to meet the test which is set forth in the statute as the prerequisite condition of allowance of the deduction, i.e., "a reasonable allowance," the taxpayer must submit other evidence in addition to evidence that an amount was authorized for payment, and was paid or accrued. See Long Island Drug Co., 35 B.T.A. 328; aff'd., 111 Fed. (2d) 593; L. Schepp Co., 25 B.T.A. 419; *247 Samuel Heath Co. v. United States, 2 Fed. Supp. 637; Miller Mfrg. Co. v. Commissioner, 149 Fed. (2d) 421, and cases cited therein at p. 423. To receive a deduction, the taxpayer must bring himself squarely within the provision allowing a deduction. Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49. As was stated in Miller Mfrg. Co. v. Commissioner, supra, "These facts and circumstances vary so widely that each corporate tub must more or less stand upon its own bottom"; and, also, "a determination by the Commissioner of a reasonable allowance for compensation, in a specific case, carries a clear presumption of correctness and places upon the taxpayer the burden of proving that it is entitled to a deduction larger than that determined by the Commissioner." Upon consideration of all of the evidence in this proceeding, it is concluded that the petitioner has established by evidence that a reasonable allowance for the salary and compensation for the varied services rendered by its president, Vincent Povse, for the year 1943, is $15,000, the amount paid to him; but it is also concluded that the petitioner has not overcome *248 the presumption of correctness of the respondent's determination of the reasonable allowance for compensation for the services rendered by the secretary-treasurer of petitioner, Edward Lucic. The respondent's determination that $9,000 was a reasonable allowance for Lucic's compensation, for the purpose of a business expense deduction, is, therefore, sustained. Cf. Universal Steel Co., 5 T.C. 627. Povse and Lucic owned the stock of the petitioner in equal shares. At the beginning of 1943, petitioner's directors decided to pay them annual salaries in equal amounts, $15,000 to each. At the outset, therefore, it must be observed that the salaries of these two officers were agreed upon in exactly the same proportion as their stock ownership. No dividends were paid upon the stock in 1943. These facts require a close examination of the evidence to determine whether or not the control over the affairs of the petitioner which the two stockholder-officer-director-employees exercised was such that the authorized salaries bore more relation to their respective interests in the earnings of the corporation as stockholders, than to "a reasonable allowance" for compensation for services. *249 The evidence has been considered carefully because of the fact that petitioner is a wholly owned corporation, and because there is no satisfactory explanation for the original arrangement of paying the two officers salaries in exactly equal amounts. Their duties were not equal. In arriving at the conclusion upon each of the items of compensation involved, considerable weight is given to the fact that Povse and Lucic were the chief workers in the plant in production under contracts. They performed very substantial and important services in production which appears to have been of greater value to the petitioner than the services of other individual employees. However, their "wages" are not included in "wages of employees" which enter into the computation of the costs of the materials produced, and, therefore, into the computation of net profits which are stated in petitioner's return to aggregate $32,009, with the result that the gross profit from sales, as reported in the return, is not accurately reflected, in our opinion. When the costs of production are so regarded, and some adjustment for the above factor is considered as a fairer reflection of the "gross profit from sales," *250 the total payment for the salaries of the petitioner's two officers is not the seemingly large percentage of the net profit for the year as first appears. The work in the plant of Povse and Lucic was of primary importance in the earning of petitioner's income in 1943. The evidence shows, clearly, that Povse contributed services of greater value than Lucic. Although their work in the plant operations, in the setting up of machines, in the hours of work, and in the direction of production was about equal, in other aspects of petitioner's business Povse performed additional, vitally important services. He obtained the business, and the necessary capital through loans, and it appears that most, if not all, of petitioner's business in 1943 was new business which Povse obtained. Lucic contributed no services toward such matters, as far as the record shows. Also, the evidence relating to Lucic's services, and the value thereof, is scant; whereas, there is substantial evidence relating to the value of Povse's services, and their nature and extent. In this connection, we are unable to agree with the respondent that little weight should be accorded to some of the testimony about the salaries *251 of others doing similar work in comparable concerns, as evidence of the reasonableness of the compensation of Povse. Some of such testimony is entitled to consideration and to it some weight is given. On the other hand, petitioner has not met its burden of proof with respect to the amount of a reasonable allowance for Lucic's compensation. Upon all of the evidence, it has been found as a fact that $15,000 is a reasonable allowance for Povse's compensation, and that $9,000 is a reasonable allowance for Lucic's compensation. Accordingly, for these two officer-employees, the petitioner is entitled to a deduction in the total amount of $24,000. Decision will be entered under Rule 50.